United States District Court
Southern District of Texas
**ENTERED**
January 25, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHARLES OTIS HERRING, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-22-330 |
| § | |
| BUC-EE'S LTD., § | |
| § | |
| Defendant. § | |

### MEMORANDUM AND OPINION

Charles Herring, a black man, sued Buc-ee's for racial discrimination in violation of Title VII of the Civil Rights Act of 1964. (Docket Entry No. 17). Herring alleged that Buc-ee's conspired with nonparty employees to accuse him of sexually harassing a female coworker and pretextually terminated his employment based on a violation of a company policy regarding which store-supplied beverages an employee can consume without paying. Buc-ee's has moved for summary judgment, arguing that Herring has not made a prima facie showing of discrimination and, even if he had, Buc-ee's terminated him for nonpretextual violations of company policy. (Docket Entry No. 30). Herring opposes the motion. Based on the record, the parties' briefs, and the relevant law, the court grants the motion and enters judgment for Buc-ee's.[1] The reasons are set out below.

**I.      Background**

Buc-ee's, a Texas-based chain of travel centers, employed Herring as a Cleaning and Maintenance Attendant at its Wharton, Texas, location in June and July of 2021. (Docket Entry No. 30-1 (Declaration of Christina Gonzalez) ¶¶ 2–3; Docket Entry No. 30-7 (Deposition of

---

[1] The court grants Herring's motion for leave to file a surreply and considers the arguments made in the proposed brief. (Docket Entry Nos. 36, 36-1).

Charles Otis Herring, dated Sept. 20, 2022) at 36:5–7). Buc-ee's gave Herring an official Buc-ee's mug when he was hired. (Herring Tr. at 90:14–17). Buc-ee's also gave Herring a copy of its Policy and Procedure Manual. (Gonzalez Decl. ¶ 4). The Manual contains the company's beverage policy: Buc-ee's employees may use their Buc-ee's-issued mug for free dispensed beverages while on duty. (Docket Entry No. 30-3 § 6.6). To take advantage of these free beverages, Buc-ee's employees may only use their Buc-ee's-issued mug; an employee who does not have his or her mug may use a disposable convenience cup for water but must pay for other beverages. (*Id.*) The Manual states that failure to pay for a beverage except in accordance with the beverage policy is theft. (*Id.*).

The Manual also sets out the company's policy against sexual harassment. (*Id.* § 2.1.2). Among other things, the policy prohibits "[s]exually-oriented remarks and innuendoes" and "suggestive comments, humor, and jokes about sex or gender-specific traits or a person's appearance." (*Id.*) Buc-ee's employees are responsible for reporting harassing conduct of other employees to supervisors. (*Id.* § 2.1.3).

Several weeks into his employment, Herring met with Andrew Goldberg, the assistant manager of the Wharton location. Goldberg and Herring discussed Herring's violation of the beverage policy, which Herring disputed. (Herring Tr. 94:16–95:7). Goldberg also discussed an incident in which Herring unbuttoned his pants in the store's coffee room to tuck in his shirt, (*id.* at 30:15–35:10), and an incident in which Herring allegedly made inappropriate comments to a teenage cashier when the two were alone in the coffee room. (*Id.* at 94:19–21). The cashier reported that Herring told her that she had "pretty pussy pink nails." (Docket Entry No. 30-8 (Deposition of McKenzie Bubela, dated Oct. 31, 2022) at 18:15–17). The cashier also reported that Herring commented on a later occasion that the cashier "do[es] it to him and that [she is] going

to get him in trouble." (*Id.* at 26:7–10). The cashier testified that Herring "follow[ed] [her] around work" and "constantly t[old] her about [her] body." (*Id.* at 55:11–14). Herring acknowledges complimenting the cashier's nails but denies harassing conduct. (Herring Tr. 50:21–25). Herring acknowledges asking the cashier to "friend him" on Facebook. (*Id.* at 53:11–13). Herring believed that the store's evening manager, Quita Cooper, had reported him for harassing the cashier based at least in part on his "friend" request. (*Id.* at 47:13–18).

On his final day at Buc-ee's, Goldberg again charged Herring with violating the company beverage policy. This brief conversation was recorded. (*See* Docket Entry No. 30-6 (Transcript of July 21, 2021 Meeting)). In that conversation, Goldberg asked Herring to clock out early and return in the morning to meet with the general manager of the Buc-ee's location. (*Id.* at 4:1–3). In response, Herring stated that he was not coming back. (*Id.* at 4:5–21). Herring did not return to work at Buc-ee's.

## II. The Legal Standard for a Motion for Summary Judgment

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### III. Analysis

#### A. The Prima Facie Case

Buc-ee's argues that Herring has failed to make a prima facie claim for discrimination.

> To establish a prima facie claim for race discrimination under Title VII, a plaintiff must show that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action

> by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting reference omitted). Buc-ee's directs its motion to the third and fourth elements of the prima facie case. (Docket Entry No. 30 at 6).

First, Buc-ee's argues that Herring was not subjected to an adverse employment action because he voluntarily resigned by not returning to work after his second meeting with Goldberg. (Docket Entry No. 30 at 6). Herring responds that Goldberg's request that he leave the store indicated that he was being terminated. (Docket Entry No. 35 at 9).

In support of its motion, Buc-ee's has submitted a recording and transcript of the conversation between Herring and Goldberg. Herring does not dispute the authenticity of those documents. In that conversation, Goldberg expressed frustration with Herring's use of a Styrofoam cup, and said, "I'm going to ask you to clock out and go home. And then tomorrow morning at 10 a.m., come talk to [store general manger] Lance [Hornsby]." (Docket Entry No. 30-6 at 2:10–16). Goldberg neither stated that he was deciding to terminate Herring's employment, nor that Hornsby would terminate Herring. After Goldberg told Herring to return the next day, Herring said, "Well, sir . . . I don't think I'll be coming back." (*Id.* at 4:5–6). When Goldberg asked for clarification, Herring said, "No, I'm not going to come back." (*Id.* at 4:21).

Voluntary resignation is not an adverse employment action, in the absence of a claim for constructive discharge. *Tagliabue v. Orkin, LLC*, 794 F. App'x 389, 393–94 (5th Cir. 2019). Herring claims constructive discharge.

"To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022) (internal quotation marks and citation omitted). To

determine whether a plaintiff was constructively discharged or voluntarily resigned, a court evaluates various factors, including the employee's:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Id.* at 924. The record shows no basis to infer that Buc-ee's took any of these actions against Herring, other than Goldberg's statement that he was to "stay out of the coffee room." (Docket Entry No. 35 at 4; *see also* Docket Entry No. 30-7 (Sept. 20, 2022, Deposition Transcript of Charles Otis Herring) at 36:13.) Goldberg's statement was made in response to an incident in which Herring unbuttoned his pants in the coffee room to tuck in his shirt. (*See generally* Herring Tr. at 29:8–36:13). No reasonable jury could find Buc-ee's liable on a Title VII claim for constructive discharge based on this single remark. *Cf. Bye*, 49 F.4th at 925 ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.").

Even if Herring's refusal to return to work was a constructive discharge and therefore an adverse employment action, Herring has not submitted or pointed to evidence showing that he "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Ernst*, 1 F.4th at 339; (*see* Herring Tr. at 196:16–21 ("[N]one of the . . . white or Hispanic male maintenance technicians were treated in the same manner. None of them were . . . cautioned about engaging the females. None of them were threatened with termination for acts of sexual harassment.")). These "vague[] referenc[es]" to other employees, with no evidence that they were "similarly situated outside of their job titles," does not satisfy this prong of the prima facie case. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 827 (5th Cir. 2022).

6

Herring's failure to make a prima facie showing of discrimination is sufficient to dismiss the case, but there are additional grounds for dismissal.

### B.      Pretext

Even assuming, without deciding, that Herring has made a prima facie showing, he has failed to raise a fact issue as to pretext.  Buc-ee's presents two legitimate, nondiscriminatory reasons for its actions: Herring's repeated violation of the Buc-ee's beverage policy and his treatment of a female coworker.  If the employer provides legitimate reasons for its actions, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose . . . . [by] rebut[ing] each nondiscriminatory or nonretaliatory reason articulated by the employer.  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

Herring does not dispute that he violated the Buc-ee's policy on employee consumption of beverages.  (Herring Tr. at 204:19–205:7).  "Violation of a work-rule is a legitimate, nondiscriminatory reason for termination." *Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373, 376 (5th Cir. 2020) (citation omitted).  Herring has not submitted or pointed to evidence supporting a factual dispute material to determining whether his termination—if he was terminated rather than resigned—for violating the beverage policy was pretextual.

Herring gave deposition testimony that Cooper's sexual harassment complaint against him (no record of which has been submitted to the court) was made for a discriminatory purpose.

> It was Ms. Cooper's plan to have me subjected to harassment.  She wanted me brought in by the big boys to read me the riot act about speaking to white girls at her store.  Because she's from a little country town, she doesn't believe that interracial relationships should occur, and she doesn't like to see Blacks involved with whites.

(Herring Tr. at 49:5–11).  This characterization of Cooper's motives is speculative and unsubstantiated.  Herring acknowledges making comments about his younger co-worker's

7

appearance and that he "probably" asked her to "hit [him] up" when he made the "friend" request on Facebook. (Docket Entry No. 53:14–15). On the record before the court, a jury could not reasonably find that a discriminatory animus, rather than legitimate efforts to maintain a workplace free of harassment, motivated Cooper's actions toward Herring. Herring has not shown a genuine factual dispute material to determining whether Buc-ee's' "proffered explanation [was] false or unworthy of credence." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007) (internal quotation marks omitted). Because the record shows that Buc-ee's did not discriminate against Herring, summary judgment is appropriate on this ground as well.

## IV.    Conclusion

The court grants Herring's motion to file a surreply. (Docket Entry No. 36). The court grants Buc-ee's' motion for summary judgment, (Docket Entry No. 30), and enters final judgment by separate order.

SIGNED on January 25, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge